**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**SHELBY COUNTY HEALTH CARE
CORPORATION d/b/a Regional Medical
Center**                                                                                    **PLAINTIFF**

**V.**                                       **3:13CV00194-BRW**

**SOUTHERN FARM BUREAU
CASUALTY INSURANCE CO.,** *et al.*                                    **DEFENDANTS**

## ORDER

In an August 14, 2015 Order,[1] the Court of Appeals for the Eighth Circuit vacated two

orders[2] granting Defendants' Motions for Summary Judgment.  The court found that I incorrectly

interpreted the cause of action as one for lien enforcement, rather than lien impairment.

For the reasons below, Defendants' Motions for Summary Judgment (Doc. Nos. 18, 37)

are GRANTED and Defendants' Motion for Summary Judgment on Cross-Claim (Doc. No. 43)

is MOOT.

## I.      BACKGROUND[3]

On February 18, 2009, John Smiley, a resident of Monroe County, Arkansas, was

involved in a car wreck with Aaron Medford, a resident of Arkansas who was working for

Medford Farm Partnership, an Arkansas business.  Mr. Smiley was taken to the Regional

Medical Center ("The Med") in Memphis, Tennessee, where he died from his injuries on

March 6, 2009.

---

[1]Doc. No. 73.

[2]Doc. Nos. 33, 57.

[3]The facts are from the parties' statements of undisputed facts, unless otherwise noted.
Doc. Nos. 20, 24, 39.

Since Mr. Smiley had an outstanding hospital bill of over $370,000.00, The Med filed a notice of a hospital lien on March 23, 2009, in Shelby County, Tennessee, and mailed it to "The Estate of John Smiley" ("the Estate") in Holly Grove, Arkansas.  In June 2009, Barbara Ford asked to be appointed Special Administratrix, and the motion was granted a few months later by the probate court in Monroe County, Arkansas.  Ms. Ford was appointed "for the purpose of pursuing whatever claims the Estate and beneficiaries might have . . . ."

On January 14, 2010, The Med sent the Estate's Virginia lawyers a letter about the outstanding balance.  Six weeks later, the Virginia lawyers responded: "Our Firm does not represent John D. Smiley.  It represents the estate and family of John D. Smiley.  We have shared your letter with the administrator of Mr. Smiley's estate and should she elect to notify Medicare we will let you know."  On March 19, 2010, The Med filed an Amended Hospital Lien in Shelby County, Tennessee, and served it on the Estate of John Smiley, the Estate's lawyers, Aaron Medford, Arkansas Farm Bureau (Medford's insurance carrier), and State Farm Insurance Company.  In a May 2010 letter to the Estate's Arkansas lawyer, The Med pointed out that they could not get the other lawyers to provide the Medicare paperwork.

The probate court held a hearing on September 7, 2010, to consider the Petition for Authorization of Compromise Settlement of Wrongful Death Claim, which the Estate intended to pursue against Medford.  Eight days later, the probate court entered an order finding that "it would be to the best interest of the heirs at law and statutory beneficiaries that this wrongful-death claim be settled . . . ."  The probate court noted that no lien had been filed in Monroe County pursuant to Arkansas law and found that the "purported medical lien filed in the State of Tennessee" by The Med "is not enforceable in this Court and is void in Arkansas . . . ."  The

probate court directed the insurance company to place the settlement proceeds in the court's

registry for distribution.  The Med asserts that it learned about this order in April 2011.[4]

On September 16, 2011, the probate court found that the estate was "opened for the

specific purpose of pursuing a wrongful-death action on behalf of the statutory beneficiaries"

and that "the time for filing claims against the estate [had] expired . . . ."  Accordingly, the

probate court closed the estate.

On August 30, 2013, The Med filed a complaint against Southern Farm Bureau, Aaron

Medford, Medford Farm Partnership, and Barbara Ford, as Administratrix of the Estate of John

Smiley.  The Med alleged that Defendants improperly settled their state-court tort claim "without

payment in honor of The Med's Hospital lien and in violation of Tenn. Code Ann. § 29-22-

104."[5]

It also asserted that "Tennessee law applies to the adjudication of The Med's hospital lien

entitlement against any recovery made by the Estate of John D. Smiley, and/or paid by

Defendants, Southern Farm [Bureau], Aaron Medford, and Medford Farms Partnerships."[6]

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[7]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

The inquiry performed is the threshold inquiry of determining whether there is the
need for a trial -- whether, in other words, there are any genuine factual issues that

---

[4]Doc. No. 1.

[5]*Id.*

[6]*Id.*

[7]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[8]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[9]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[10]  A court must view the facts in the light most favorable to the party opposing the motion.[11]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[12]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[13]

---

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[9]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[10]*Id.* at 728.

[11]*Id.* at 727-28.

[12]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[13]*Anderson*, 477 U.S. at 248.

## III.    DISCUSSION

### A.    *Rooker-Feldman* Doctrine

Plaintiff's claim appears to be barred by the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine "disallows indirect attempts by federal plaintiffs to undermine state court decisions."[14]  "The state and federal claims need not be identical."[15]  *Rooker-Feldman* "precludes federal court jurisdiction over federal claims that are 'inextricably intertwined' with claims of the state court action.  A federal claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."[16]

Here, Plaintiff makes a claim for lien impairment.  To succeed, Plaintiff must establish the existence of a properly perfected, enforceable lien.[17]  As noted above, the Arkansas probate court, after a hearing, found that Plaintiff's lien was void and not enforceable in Arkansas.  It also determined that the underlying state-court claim being settled was for wrongful death, which is not subject to liens in Arkansas.  To now find that there was a valid, enforceable lien would effectively reverse the decision made by the Arkansas probate court.

Though this is a lien-impairment case, Plaintiff makes many arguments about how the case considered by the probate court was not for wrongful death and the parties and probate court erroneously declared it a wrongful-death case.  Essentially, Plaintiff is asking me to

---

[14]*Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000).

[15]*Id.* at 493.

[16]*Gisslen v. City of Crystal, Minn.*, 345 F.3d 624, 627 (8th Cir. 2003) (internal citations omitted).

[17]See *Shelby County Health Care Corp. v. Southern Farm Bureau Casualty Insurance Company*, 798 F.3d 686, 689-90 (8th Cir. 2014) citing *Shelby County Health Care Corp. v. Baumgartner*, No. W2008-01771-COA-R3-CV, 2011 WL 303249, at *12 ("[I]f The Med failed to perfect its lien in accordance with subsections (a) and (b) of Section 29–22–102, this would be fatal to its [impairment] claims against [the insurer] under the lien.").

reconsider the wrongful-death determination so that its lien could possibly attach to the settlement proceeds.  All of the arguments Plaintiff raises on this issue could have and should have been presented to the probate court.  Collaterally attacking this ruling in federal court is not permitted under *Rooker-Feldman.*

Plaintiff asserts that it was not a party in the probate proceeding and therefore that court's ruling does not apply.  However, the fact that Plaintiff was not involved in the probate proceedings (whether by choice or by accident) does not preclude the application of the *Rooker-Feldman* doctrine.[18]  Federal district courts are "simply without authority to review most state court judgments—regardless of who might request them to do so.[19]

Furthermore, based on the record, it appears that Plaintiff, at the very least, should have known that probate proceedings were taking place in Arkansas and would involve settlement of claims that might affect its lien.  Plaintiff had the opportunity to intervene in the probate proceedings, but chose not to.  By Plaintiff's own admission it knew by April 2011 that an order had been entered by the probate court.  Still, Plaintiff did nothing until it filed this case in August 2013.  If Plaintiff disagreed with the probate court's ruling and interpretation of Arkansas law, it should have intervened in the probate proceedings.

Plaintiff's lien-impairment claim is an attempt to obtain under Tennessee law what it could not obtain under Arkansas law: a lien on the wrongful-death settlement.  Though the claim is now for lien impairment, this appears to be an end-run around Plaintiff's failure to enforce its lien during the probate proceedings.  For Plaintiff to succeed on the lien-impairment claim, there

---

[18]*Lemonds*, 222 F.3d at 495 (holding "that appellants were not parties to the state suit is not by itself dispositive" on the application of *Rooker-Feldman*).

[19]*Id.*

must have been a valid and enforceable lien.  The probate court has ruled that the lien was not

valid in Arkansas, and that ruling cannot be undone by this Court.

**B.      Choice-of-Law**

Even if *Rooker-Feldman* did not bar Plaintiff's claims, Defendants are entitled to

summary judgment.

Plaintiff's lien-impairment claim is a product of Tennessee law, and there is no similar

law in Arkansas.  Tennessee law permits a hospital with a properly perfected a lien to bring a

cause of action for lien impairment against parties who settle a case (which is directly related to

the events that gave rise to the outstanding hospital bills) without first satisfying the lien.[20]

Again, to succeed on a lien-impairment case, a valid lien must exist.

Arkansas and Tennessee both have hospital-lien statutes.  To perfect a lien in Tennessee,

a party must file a proper notice "in the office of the clerk of the circuit court of the county in

which the hospital is located, and in the county wherein the patient resides, if a resident of this

state . . ."[21] and must send the notice to the patient and all potentially interested parties.[22]

Arkansas law requires the same.  However, Arkansas law sets out an additional requirement:  if

the hospital is aware that the patient has "instituted an action in any court in Arkansas to

enforce" its claim against a tortfeasor, the hospital "in lieu of, or in addition to serving notice" of

---

[20]Tenn. Code Ann. §§ 29-22-102 and 104.

[21]Oddly, Tennessee law does not have any additional requirements for out-of-state residents, which suggest that in-state residents are more protected because they are guaranteed notice in the county where they reside.  Under Arkansas law, the requirement that notice be filed "in the court in which the action is pending" is not limited to Arkansas courts, which would prevent issues like the ones in this case.

[22]Tenn. Code Ann. § 29-22-102.

the claim must file a copy of the notice "in the court in which the action is pending."[23] Tennessee law does not include this requirement.

Arkansas and Tennessee law also differ on whether a hospital lien can attach to the proceeds from a wrongful-death case.  Tennessee permits a hospital lien to attach to the proceeds of a wrongful-death case.[24]  To the contrary, Arkansas permits hospital liens to attach only to causes of action "to which <u>the patient</u> is entitled."[25]  A wrongful-death case is brought by the heirs of the deceased patient, not the patient.[26]  Additionally, Arkansas law explicitly sets out that no recovery under a wrongful-death claim may be subject to the debts of the deceased.[27]  The Arkansas Supreme Court's position is clear: "Once a settlement is obtained . . . the proceeds of a wrongful-death action are for the sole benefit of the statutory beneficiaries and may not be used to pay off debts of the estate."[28]  It is undisputed that a hospital lien cannot attach to a wrongful-death recovery in Arkansas.

So, there is no conflict of law regarding lien impairment, but there are conflicts of law related to steps required to perfect a lien and whether a hospital lien can attach to wrongful-death proceeds.

---

[23]Ark. Code Ann. § 18-46-105(1)(B).

[24]Under Tennessee law, the lien will attach to "any and all causes of action . . . accruing to the person [who was treated at the hospital] . . . or accruing to the legal representative of such person in the case of such person's death . . . ."  Tenn. Code. Ann. § 29-22-101(a).

[25]Ark. Code Ann. § 18-46-104.

[26]*Brewer v. Poole*, 207 S.W.3d 458, 464 (Ark. 2005).

[27]Arkansas's wrongful-death statute reads: "No part of any recovery referred to in this section shall be subject to the debts of the deceased or become, in any way, a part of the assets of the estate of the deceased person."  Ark. Code Ann. § 16-62-102 (e).

[28]*Douglas v. Holbert*, 983 S.W.2d 392, 396 (1998).

Because this case is in federal court based on diversity of citizenship, Arkansas's choice-of-law provisions apply.[29]  These provisions involve both the *lex loci delicti* rule[30] and the five Leflar Factors, which are "(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law."[31]

Under the *lex loci delicti* rule, Arkansas law applies; the wrong – allegedly impairing a Tennessee lien – took place in Arkansas by parties from Arkansas.[32]  Regarding the Leflar Factors, (1), (3), and (5) are a wash – if Tennessee law applied, Defendants could be liable for impairing a properly perfected Tennessee lien.  If Arkansas law applied, not only would the lien not be properly perfected, but it would not attach to the proceeds of the wrongful-death settlement, which means there could be no impairment.  Plaintiff argues that factors (2) and (4) weigh in favor of Tennessee law because enforcing the lien will "enhance the provision of interstate emergency medical services."[33]  It also asserts that it "should not be subject to the differing laws of other states."[34]  Finally, Plaintiff contends that it treats thousands of Arkansas patients each year and "Arkansas has a significant interest in the encouragement of the

---

[29]*Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir. 1994).

[30]The law of the place where the tort was committed.

[31]*Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 238, 251 (2006).

[32]I realize that the administratrix of the Estate and some of her lawyers are Virginia residents, but no one has argued for the application of Virginia law.

[33]Doc. No. 23.

[34]*Id.*

emergency treatment of its citizens by Tennessee hospitals, and the application of Tennessee hospital lien law well serves this interest."[35]

While these points are well taken, Arkansas has a compelling interest in efficient resolution of its cases.  The fact that Arkansas law requires a party to file a notice of hospital lien in the county of "the court in which the action is pending" supports efficient resolution of cases.[36]  Additionally, Arkansas has a compelling interest in protecting wrongful-death proceeds from the creditors of a decedent.  This interest is supported by the fact that both the hospital-lien and wrongful-death statutes explicitly prevent a lien from attaching to wrongful-death proceeds.

Plaintiff's reliance on another Eastern District of Arkansas decision is misplaced.  First, that case did not have state-court judgment addressing the validity of the lien.  Second, the case involved personal injury survival claims, not involve wrongful death.[37]  There is no conflict between the states' laws regarding whether a lien can attach to recovery of personal-injury survival damages.  However, it is well settled that wrongful-death proceeds are exempt from hospital liens in Arkansas.  Even the Tennessee Court of Appeals has recognized that "[a]s a general matter, Arkansas courts decline to enforce the laws of other states if they decide that these laws contravene the established public policy in Arkansas . . . ."[38]

Plaintiff also argues that it should not be required to track down former patients to see where cases might be filed, nor should it be required to be familiar with laws other than those in Tennessee.  These arguments fail for two reasons.  First, Plaintiff was aware that Plaintiff died

---

[35]*Id.*

[36]Ark. Code Ann. § 18-46-105(1)(B).

[37]*State Farm Mut. Auto. Ins. Co. v. Shelby County Health Care Corp.*, No. 3:10CV00169, 2011 WL 5508854 (E.D. Ark. Nov. 10, 2011).

[38]*Lien v. Couch*, 993 S.W.2d 52, 58 (Tenn. App. 1998).

and that the estate would go to probate.  The <u>only</u> court that could oversee the probate proceedings is the probate court in Monroe County, Arkansas, because that is where Mr. Smiley resided at the time of his death.[39]  Second, as Plaintiff points out, it treats thousands of Arkansas residents each year, and no doubt treats thousands of Mississippi residents.  That said, Plaintiff should reasonably expect to be involved in probate hearings when out-of-state patients die in their care and leave bills unpaid.

Though Plaintiff perfected its lien under Tennessee law, that was not enough.  It was required to either convert that lien to a judgment and file it in Arkansas or it was required to perfect its lien pursuant to Arkansas law.  It did neither.  Plaintiff was aware of these procedures because in other cases where it had properly perfected lien in Tennessee, it obtained a judgment, and then complied with the Uniform Enforcement of Foreign Judgment Act[40] -- a law recognized by both Arkansas and Tennessee.[41]

Even if the lien was properly perfected in Arkansas, the Arkansas probate court ruled that the settlement was for a wrongful-death claim.  Plaintiff cannot overcome the fact that Arkansas law prevents the lien from attaching to the proceeds of a wrongful-death case.  If Plaintiff intended to protect its interest, argue against Arkansas law, or assert that the underlying case was not actually for wrongful-death, it was required to perfect its lien in Arkansas (or at the very least make the probate court aware of its lien, which, notably, Defendants did) and pursue its claims in the probate court.

---

[39]*Lawrence v. Sullivan*, 90 Ark. App. 206, 208-09 (2005) ("Arkansas Code Annotated section 28-40-102(a)(1) (Repl.2004) provides that the venue for the probate of a will and the administration of a decedent's estate is the county where the decedent resided at the time of his or her death.").

[40]Doc. Nos. 31-5, 31-6.

[41]Ark. Code Ann. §§ 16-66-601, *et seq*. and Tenn. Code Ann. §§ 26-6-101, *et seq*.

Plaintiff's lien was not properly perfected under Arkansas law, and therefore, Plaintiff did not have an enforceable lien.  Without an enforceable lien, there is no cause of action for lien impairment.  Finally, even if the lien had been perfected, Arkansas law would prevent lien from attaching to the wrongful-death proceeds.  Importantly, Plaintiff has cited no law to support its argument that a Tennessee lien can attach to a wrongful-death settlement in Arkansas. Tennessee law that permits a lien to attach to a wrongful-death settlement cannot trump Arkansas's law to the contrary.

**CONCLUSION**

Based on the findings of fact and conclusions of law above, Defendants' Motions for Summary Judgment (Doc. Nos. 18, 37 are GRANTED and Defendant's Motion for Summary Judgment on Cross-Claim (Doc. No. 43) is MOOT.

IT IS SO ORDERED this 19th day of October, 2015.

/s/ Billy Roy Wilson_____
UNITED STATES DISTRICT JUDGE